UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

**07 CV 10674**

MEIJER, INC. and MEIJER DISTRIBUTION, INC.,
on behalf of themselves and all others similarly
situated,

                    Plaintiffs,

              vs.

LG ELECTRONICS, INC.; LP DISPLAYS
INTERNATIONAL LTD. f/k/a LG. PHILIPS
DISPLAYS; KONINKLIJKE PHILIPS
ELECTRONICS N.V. a/k/a ROYAL PHILIPS
ELECTRONICS N.V.; PHILIPS ELECTRONICS
NORTH AMERICA CORPORATION;
MATSUSHITA ELECTRIC INDUSTRIAL CO.,
LTD.; PANASONIC CORPORATION OF NORTH
AMERICA; SAMSUNG ELECTRONICS CO., LTD.;
SAMSUNG SDI CO. LTD. f/k/a SAMSUNG
DISPLAY DEVICE CO. LTD.; SAMSUNG
ELECTRONICS AMERICA, INC.; SAMSUNG SDI
AMERICA, INC.; TOSHIBA CORPORATION;
TOSHIBA AMERICA ELECTRONICS
COMPONENTS, INC.; TOSHIBA AMERICA
INFORMATION SYSTEMS, INC.; MATSUSHITA
TOSHIBA PICTURE DISPLAY CO., LTD. a/k/a MT
PICTURE DISPLAY CO., LTD.; MT PICTURE
DISPLAY CORPORATION OF AMERICA (NEW
YORK); MT PICTURE DISPLAY CORPORATION
OF AMERICA (OHIO); CHUNGHWA PICTURE
TUBES, LTD.; and TATUNG COMPANY OF
AMERICA, INC.,

                    Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Civil Action No. _____

**CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

[stamp: NOV 29 2007 U.S.D.C. S.D.N.Y. CASHIERS]

Plaintiffs, Meijer, Inc. and Meijer Distribution, Inc., bring this action for damages and

injunctive relief for price fixing under Section 1 of the Sherman Antitrust Act of 1890, 15 U.S.C.

§1, and the antitrust laws of the United States against seven[1] of the national, international and dominant manufacturers of cathode ray tubes and products containing cathode ray tubes ("CRTs") named above, which are or were operating in the United States between at least May 1, 1998 and the present.  Based upon personal knowledge, information and belief, and the investigation of counsel, Plaintiffs Meijer, Inc. and Meijer Distribution, Inc. allege as follows:

## NATURE OF THE ACTION

1.      This case arises out of an international conspiracy among defendants and their co-conspirators to fix, maintain and/or stabilize the otherwise declining prices of CRTs and products containing CRTs (together "CRT Products") sold in the United States and worldwide.

2.      As used in this Complaint, "CRT Products" means cathode ray tubes and products containing cathode ray tubes, including television sets and computer monitors.

3.      This case is brought as a class action on behalf of all persons and entities who, from at least as early as May 1, 1998 and continuing to the present (hereinafter, the "Class Period"), purchased CRT Products directly from one or more defendants and/or their co-conspirators.

4.      During the Class Period, and possibly earlier, defendants conspired to fix, raise, maintain and/or stabilize prices in the worldwide market for CRT Products by the means and mechanisms described herein.

5.      As a direct and proximate result of defendants' unlawful conduct and price-fixing conspiracy, plaintiff and the members of the Class (defined below) have paid unlawful,

---

[1]      The seven groups of affiliated company manufacturers identified and described below are:  LG Electronics, Royal Philips, Samsung, Matsushita, Toshiba and Chunghwa.  The seventh, LP Displays, was owned by LG Electronics and Royal Philips until it became independent in 2006.

artificially higher prices for CRT Products than they would have paid in a competitive market, and therefore, have suffered injury to their respective businesses and property.

6.      During the period relevant to this Complaint, plaintiff has been a direct purchaser of CRT Products from one or more of the defendants. Plaintiff brings this class action pursuant to Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§15 and 26, to recover damages, the costs of suit, including reasonable attorneys' fees, to enjoin the continuation of the conspiracy, and for such other relief as is afforded under the antitrust laws of the United States for defendants' violations of Section 1 of the Sherman Act, 15 U.S.C. §1.

## PLAINTIFFS

7.      Plaintiffs Meijer, Inc. and Meijer Distribution, Inc. (together "Meijer" or "Plaintiff") are Michigan corporations with their principal places of business located at 2929 Walker Avenue NW, Grand Rapids, Michigan 49544. During the Class Period, Meijer purchased CRT Products directly from one or more of the defendants.

8.      The prices Meijer paid to defendants for CRT Products were greater than the prices Meijer would have paid absent the conspiracy alleged herein. Meijer has therefore been injured in its business and property by reason of defendants' antitrust violations. Meijer asserts its claims on behalf of itself and all direct purchasers who, during the Class Period, purchased CRT Products in the United States from one or more of the defendants.

## DEFENDANTS

9.      Defendant LG Electronics, Inc. ("LG Electronics") is a corporation established under the laws of Korea with its principal place of business located at LG Twin Towers 20, Yeouido-dong, Yeongdeungpo-gu, Seoul, Korea 150-721. LG Electronics, Inc. is a $48.5 billion global force in consumer electronics, home appliances and mobile communications, which

3

established its first overseas branch office in New York in 1968. The company's name was changed from GoldStar Communications to LG Electronics in 1995, the year in which it also acquired Zenith in the United States. During the Class Period, LG Electronics manufactured, sold and distributed CRT Products to customers throughout the United States.

10.    Defendant LP Displays International Ltd. f/k/a/ LG. Philips Displays ("LP Displays") was created in 2001 as a 50/50 joint venture between defendants LG Electronics and Royal Philips Electronics of The Netherlands. In March 2007, LP Displays became an independent company organized under the laws of Hong Kong with its principal place of business located at Corporate Communications, 6th Floor, ING Tower, 308 Des Voeux Road Central, Sheung Wan, Hong Kong. LP Displays is a leading supplier of color picture tubes for use in television sets and computer monitors with annual sales for 2006 of over $2 billion. LP Displays claims to be the world's leading company in CRT display technologies and has produced one in every four television and computer monitor tubes sold in the world, for a worldwide market share of 27%. LP Displays has global operations spanning Asia, the Americas and Europe, employing over 8,000 people worldwide. According to media reports, Royal Philips spokesperson Joon Knapen has stated that the CRT joint venture with LG Electronics became insolvent in early 2006. According to Knapen, in December 2005, as a result of increased pressure on demand and prices for CRTs, Philips wrote off the remaining book value of 126 million Euros of its investment and said it would not inject further capital into the joint venture. LG.Philips Displays' holding company then filed for insolvency in January 2006, but the company said in May 2006 that it would continue operations from various component plants under continued support from a syndicate of banks. The venture similarly announced in March 2007 that Royal Philips and LG Electronics would lose control over the company and the shares

4

would be owned by financial institutions and private equity firms. During the Class Period, LP Displays sold and distributed CRT Products to customers throughout the United States.

11.    Defendant Koninklijke Philips Electronics N.V. a/k/a Royal Philips Electronics N.V. ("Royal Philips") is a company formed under the laws of The Netherlands with its principal place of business located at Amstelplein 2, Breitner Center, 1070 MX Amsterdam, The Netherlands. Royal Philips, founded in 1891, is one of the world's largest electronics companies, with 160,900 employees located in over 60 countries. The consumer electronics division employs approximately 14,500 people worldwide, maintaining sales and service organizations in 50 countries. Royal Philips spokesman Joon Knapen has stated to media sources that Royal Philips had sole ownership of its CRT business until 2000, and in 2001 transferred the business into a 50/50 joint venture with Korean LG Electronics to form LG.Philips Displays. Before that joint venture was formed, the CRT business was part of Royal Philips' Components division. The CRT joint venture with LG became insolvent in early 2006. In December 2005, as a result of increased pressure on demand and prices for CRTs, Philips wrote off the remaining book value of 126 million Euros of its investment and said it would not inject further capital into the joint venture. During the Class Period, Royal Philips manufactured, sold and distributed CRT Products to customers throughout the United States.

12.    Defendant Philips Electronics North America Corporation ("Philips Electronics NA") is a Delaware corporation with its principal place of business located at 1251 Avenue of the Americas, New York, New York 10020-1104. Philips Electronics NA is a wholly owned and controlled subsidiary of Defendant Royal Philips, operating as a division of Royal Philips. During the Class Period, Philips Electronics NA manufactured, sold and distributed CRT Products to customers throughout the United States.

13.    Defendant Matsushita Electric Industrial Co., Ltd. ("Matsushita") is a company organized under the laws of Japan with its principal place of business located at 1006 Kadoma, Kadoma City, Osaka 571-8501, Japan. Matsushita a/k/a Panasonic is one of the largest electronic product manufacturers in the world, comprised of over 600 companies and manufacturing over 15,000 products under brands such as Panasonic, National, Technics and Quasar. During the Class Period, Matsushita manufactured, sold and distributed CRT Products to customers throughout the United States.

14.    Defendant Panasonic Corporation of America ("Panasonic") is a Delaware corporation with its principal place of business located at One Panasonic Way, Secaucus, New Jersey 07094. Panasonic is a wholly owned and controlled subsidiary of Defendant Matsushita. During the Class Period, Panasonic manufactured, sold and distributed CRT Products to customers throughout the United States.

15.    Defendant Samsung Electronics Co., Ltd. is a company organized under the laws of Korea with its principal place of business located a Samsung Main Building, 250, Taepyeongno 2-ga, Jung-gu, Seoul, 100-742, Korea. Samsung also claims to be the world's largest CRT producer. During the Class period, Samsung Electronics Co., Ltd manufactured, sold and distributed CRT Products to customers throughout the United States.

16.    Defendant Samsung SDI Co., Ltd. f/k/a Samsung Display Device Co., Ltd. is a company organized under the laws of Korea with its principal place of business located at 15th - 18th Floor, Samsung Life Insurance Building, 150 Taepyungro 2-ga, Jug-gu, Seoul 100-716, South Korea. Samsung SDI Co., Ltd. is a public company, with Samsung Electronics Co., Ltd being the majority shareholder holding almost 20 percent of the stock. Founded in 1970, Samsung SDI Co. claims to be the world's leading company in the display and energy

businesses, with 28,000 employees and facilities in 18 countries. Samsung SDI Co., Ltd. maintains offices in Chicago and San Diego. During the Class Period, Samsung SDI Co., Ltd manufactured, sold and distributed CRT Products to customers throughout the United States.

17.    Defendant Samsung Electronics America, Inc. is a New York corporation with its principal place of business located at 105 Challenger Road, 6th Floor, Ridgefield Park, New Jersey 07660. Samsung Electronics America, Inc. is a wholly owned and controlled subsidiary of defendant Samsung Electronics Co., Ltd. During the Class Period, Samsung Electronics America, Inc. sold and distributed CRT Products manufactured by Samsung Electronics Co., Ltd to customers throughout the United States.

18.    Defendant Samsung SDI America, Inc. is a California corporation with its principal place of business located at 3333 Michelson Drive, Suite 700, Irvine, California. Samsung SDI America, Inc. is a wholly owned and controlled subsidiary of Samsung SDI Co., Ltd, which is in turn a wholly owned and controlled subsidiary of Samsung Electronics Co., Ltd. During the Class Period, Samsung SDI America, Inc. manufactured, sold and distributed CRT Products to customers throughout the United States.

19.    Defendants Samsung Electronics Co., Ltd., Samsung SDI Co., Ltd., Samsung Electronics America, Inc. and Samsung SDI America, Inc. are referred to collectively as "Samsung."

20.    Defendant Toshiba Corporation is a company organized under the laws of Japan with its principal place of business located at 1-1, Shibaura 1-chome, Minato-ku, Tokyo 105-8001, Japan. Toshiba Corporation was established in 1875, currently has over 190,000 employees and has its shares traded on the Tokyo, Osaka, Nagoya and London stock exchanges.

During the Class Period, Toshiba Corporation manufactured, sold and distributed CRT Products to customers throughout the United States.

21.    Defendant Toshiba America Electronics Components, Inc. is a California corporation with its principal places of business located at 9775 Toledo Way, Irvine, California 92618 and 19900 MacArthur Blvd., Suite 400, Irvine, California 92612. Toshiba America Electronics Components, Inc. is a wholly-owned and controlled subsidiary of Toshiba America, Inc., a holding company for Defendant Toshiba Corporation, and the sales and marketing representative for Defendant Matsushita Toshiba Picture Display Co., Ltd. During the Class Period, Toshiba America Electronics Components, Inc. sold and distributed CRT Products to customers throughout the United States.

22.    Defendant Toshiba America Information Systems, Inc. is a California corporation with its principal place of business located at 9470 Irvine Boulevard, Irvine, California 92718. Toshiba America Information Systems, Inc. is a wholly owned and controlled subsidiary of Toshiba America, Inc., a holding company for Defendant Toshiba Corporation. During the Class Period, Toshiba America Information Systems, Inc. sold and distributed CRT Products manufactured by Toshiba Corporation to customers throughout the United States.

23.    Defendants Toshiba Corporation, Toshiba America Electronics Components, Inc. and Toshiba America Information Systems, Inc. are referred to collectively as "Toshiba."

24.    Defendant Matsushita Toshiba Picture Display Co., Ltd. a/k/a MT Picture Display Co., Ltd. was originally established in 1968, and became a joint venture of Defendants Matsushita and Toshiba. It is organized under the laws of Japan with its principal place of business located at Rivage Shingagawa, 1-8, Konan 4-chome, Minato-ku, Tokyo 108-0075, Japan. The joint venture was established in April 2003 to integrate the global CRT operations of

Matsushita and Toshiba, including research and development, manufacturing and sales. It was the world's third largest CRT manufacturer, employing 15,700 people worldwide with facilities in seven countries throughout the world. It operated as a joint venture until April 2007, when it became a wholly owned and controlled subsidiary of Matsushita. During the Class Period, Matsushita Toshiba Picture Display Co., Ltd manufactured, sold and distributed CRT Products to customers throughout the United States.

25.     Defendant MT Picture Display Corporation of America (New York) ("MTPDA(NY)") is a dissolved Maryland Corporation previously located at 100 Westinghouse Circle, Horseheads, New York 14845. MTPDA(NY) became a wholly owned and controlled subsidiary of Matsushita Toshiba Picture Display Co., Ltd upon its establishment in April 2003. The facility had been established in 1985 by Defendant Toshiba as a manufacturing base for its CRT Products in the United States. Matsushita and Toshiba announced plans to discontinue operations on December 29, 2005, after which began closing and liquidation procedures, resulting in lay offs of 800 workers. The company, which had manufactured CRT Products for television sets above 30 inches wide in the North American market had faced severe price and market erosion due to the increasing popularity of flat-panel TVs. The closing was part of the company's global restructuring initiatives in the CRT business. MTPDA(NY) specialized in the manufacture of CRT televisions above 30 inches wide, supplying some 950,000 units annually to the North American market. During the Class Period prior to December 2005, MTPDA(NY) manufactured, sold and distributed CRT Products throughout the United States.

26.     Defendant MT Picture Display Corporation of America (Ohio) ("MTPDA(OH)") was a Delaware corporation with its principal place of business located at 1554 McKaig Avenue, Building A, Troy, Ohio 45373, which corporation was dissolved on March 27, 2007.

MTPDA(OH) became a wholly owned and controlled subsidiary of Matsushita Toshiba Picture

Display Co., Ltd. in April 2003 and in March 2004 began manufacturing 30 and 34 inch wide

CRTs for high definition televisions. The 19 year old plant, formerly Toshiba-Westinghouse,

had produced 32 and 36 inch CRTs. In December 2005, MTPDA(OH) announced the largest

layoff in the history of Troy, Ohio, announcing it would close the television picture tube plant in

February 2006, eliminating the plant's remaining 480 jobs. The Troy plant was the last

remaining U.S. supplier of the bulky cathode rate tubes traditionally used in television sets.

During the Class Period prior to February 2006, MTPDA(OH) manufactured, sold and

distributed CRT Products throughout the United States.

27.    Defendant Chunghwa Picture Tubes, Ltd. ("Chunghwa") is a company

established under the laws of Taiwan with its principal place of business located at No. 1127,

Heping Road, Bade City, Taoyuan, Taiwan, 334 (R.O.C.). Chunghwa is a wholly owned and

controlled subsidiary of Tatung Company of Taiwan. During the Class Period, Chunghwa

manufactured, sold and distributed CRT Products throughout the United States.

28.    Defendant Tatung Company of America, Inc. ("Tatung America") is a California

corporation with its principal place of business located at 2850 El Presidio Street, Long Beach,

California. Tatung America was founded in 1972 and is a wholly owned and controlled

subsidiary of Tatung Company of Taiwan. During the Class Period, Tatung manufactured, sold

and distributed CRT Products throughout the United States.

## CO-CONSPIRATORS AND AGENTS

29.    Other natural persons, corporations, and entities not named as defendants herein,

have participated in the unlawful conspiratorial activity alleged herein in violation of the antitrust

laws of the United States.

30.    Whenever in this Complaint reference is made to a statement, or transaction of any corporation or entity, the allegation means that the corporation or entity acted, stated, or transacted by or through its directors, members, partners, officers, employees, or agents, while they were engaged in the management, direction, control, or conduct of the corporation's or entity's business and acting within the scope of their authority.

## JURISDICTION AND VENUE

31.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§1331, 1337 and 15 U.S.C. §§15, 26.

32.    Venue is proper in this district pursuant to 28 U.S.C. §§15, 22 and 26 and pursuant to 28 U.S.C. §1391(b), (c) and (d), because at all times relevant to the Complaint, (a) defendants transacted business, were found, or acted through subsidiaries or agents present in this district; (b) a substantial part of plaintiff's claims occurred in this district; (c) a substantial portion of the affected interstate trade and commerce described below has been carried out in this district.

33.    This Court has *in personam* jurisdiction over each of the defendants because, *inter alia*, each of the defendants: (a) committed acts in furtherance of the conspiracy alleged herein in this district and directed the unlawful conspiracy through persons and entities located in this district, including fixing the prices of CRT Products sold to purchasers in this district; (b) transacted business in CRT Products and other products in this district; (c) maintain and have maintained continuous and systemic contacts with this district over a period of years; (d) purposefully availed itself of the benefits of doing business in this district. Accordingly, each of the defendants maintain minimum contacts with this district more than sufficient to subject it to service of process and sufficient to comply with due process of law.

34.    Alternatively, there is jurisdiction over foreign defendants pursuant to Federal Rule of Civil Procedure 4(k)(2).

## FACTUAL ALLEGATIONS

### Investigation of International Price Fixing Conspiracy

35.    On November 8, 2007, antitrust authorities in Europe, Japan and South Korea raided manufacturers of CRT Products as part of an international investigation of alleged price fixing.

36.    Defendant MT Picture Display Co., Ltd, the CRT unit of Defendant Matsushita Electric Industrial Co., Ltd., confirmed that it had been raided by Japan's Fair Trade Commission.

37.    The KYODO NEWS reported on November 8, 2007 that Japan's Fair Trade Commission conducted on-site inspections of a Matsushita Electric Industrial Co. subsidiary, MT Picture Display, a CRT maker that was established in 1968 and became a wholly-owned Matsushita subsidiary in April 2007.  Upon information and belief, MT Picture Display fixed prices for CRTs with manufacturers of three Asian countries, including South Korea's Samsung SDI Co.

38.    KYODO NEWS further reported on November 8, 2007 that:

> Officials of these companies are believed to have had at least 10 meetings since 2005 in major Asian cities to coordinate target prices when delivering their products to TV manufacturers in Japan and South Korea, the sources said.

39.    Defendant Samsung SDI Co., Ltd, a public company that is 20% owned by Defendant Samsung Electronics, was raided by South Korea's Fair Trade Commission, which has started an investigation into its CRT business.

40.    The European Commission confirmed that it had carried out surprise inspections at the premises of the European offices of the manufacturers of CRT Products, seeking evidence of cartel activity in the sector.

41.    According to Japan's NIKKEI BUSINESS DAILY, authorities in the United States were also involved in the investigation of an alleged international cartel of CRT manufacturers.

42.    The ASIAN SHIMBUN reported on November 10, 2007 that in addition to MT Picture Display and Samsung SDI Co., a CRT manufacturer affiliated with Taiwan's Chunghwa Picture Tubes and another affiliated with China's LP Displays "are suspected of involvement, the sources say."

43.    The ASIAN SHIMBUN further reported on November 10, 2007 that "[t]he representatives held meetings in Southeast Asia where the companies operate CRT factories, the sources said. The European Commission, the European Union's executive branch, and the U.S. Justice Department have been investigating the four companies' [referring to the four Asian-based manufacturers – MT Picture Display, Samsung SDI Co., Chunghwa Picture Tubes, LP Displays] overseas units and are closely consulting with the Fair Trade Commission by sharing information."

44.    On November 12, 2007, DOW JONES INTERNATIONAL NEWS reported that Defendant Chunghwa Picture Tubes, Ltd had received a subpoena on November 9, 2007 issued by a California District Court "to assist in an investigation into whether cathode ray tube manufacturers had set up a cartel."

45.    As reported by unnamed sources close to the investigations, the firms are suspected of fixing the amount they charge TV manufacturers for CRTs in an effort to stop the prices from dropping.

13

46.    On November 21, 2007, Royal Philips publicly disclosed that it too was subject to one or more investigations into anticompetitive acts in the CRT industry. Philips spokesman Joon Knapen declined to comment on which jurisdictions have started investigations. Philips stated that it intended to assist the regulators.

47.    Upon information and belief and upon the investigation of counsel, the suspicions of the antitrust regulators in Europe, Japan, South Korea and the United States of price fixing by manufacturers in the CRT market are well-founded, true and correct.

### The CRT Television Market

48.    Conventional CRT televisions were being rapidly replaced by liquid crystal and plasma displays, resulting in the alleged price-fixing scheme to slow down the declining CRT Product prices.

49.    Between 2000 and 2006, revenues from the sale of CRT televisions in the United States declined by 50.7 percent and were predicted to decline by an additional 84.5 percent between 2006 and 2010. By contrast, revenues from the sale of flat panel televisions in the United States increased by almost 2,000 percent between 2000 and 2006 and were predicted to increase by another 65.1 percent between 2006 and 2010.

50.    Although demand was sharply declining as the result of the popularity of flat-panel LCDs and plasma televisions, CRT televisions were still being sold during the Class Period, making collusion and the international price fixing conspiracy worthwhile.

51.    In the fourth quarter of 2005, 78.9 percent of all televisions shipped worldwide contained CRT Products. In 2005, approximately 47 million CRT computer monitors were sold worldwide.

52.    Approximately 9.5 million CRT computer monitors were sold in the U.S. in 2005.

14

53.    ELECTRONIC NEWS reported in June 2006 that, according to the market research firm iSuppli Corp., that in the first quarter of 2006, CRTs accounted for 76 percent of worldwide TV units sold, with LCDs accounting for only 17 percent of shipments. In 2006, the worldwide CRT television market was described as a 32 million unit market.

54.    According to industry estimates, some 60 percent of global demand for color television sets will be for CRT models in the years extending out through March 2008, although demand is expected to decline to 42 percent by 2009.

55.    Currently, according to Naranjo, "The Global Television Market," DISPLAY SEARCH REPORT, CRT television sets account for 37.3 percent of the television set revenues in North America.

56.    Apart from being rugged and cheap, and thus suitable for many purposes in multiple-TV households during the Class Period, such as for children's use, for video game rooms and for bedrooms, good CRT monitors also presented superb picture quality.

57.    CRT screens have much deeper cabinets compared to LCD screens for a given area, however, they can display higher resolutions on a smaller screen. The result is that CRTs can be useful for displaying photos with a high pixels per unit area and correct color balance, or for having large desktop area concentrated into a small screen.

58.    Due to the high cost of large LCD panels and plasma displays during the Class Period, a market niche for CRTs existed as a cheaper alternative to these technologies.

### Structural Characteristics of the CRT Product Market

59.    The structural characteristics of the CRT Product market are conducive to the type of collusive activity alleged in this Complaint.

60.    CRT Products are essentially commodity-like products, which are manufactured in standardized sizes. One defendants' CRT Product for a particular application, such as for a particular size television set or computer monitor, is substitutable for another's. Defendants sell, and plaintiff (and members of the Class) purchase, CRT Products primarily on the basis of price.

61.    It is easier to form and sustain a cartel when the product in question is commodity-like because it is easier to agree on prices to charge and to monitor those prices once an agreement is formed.

62.    Demand for CRT Products is declining. Static or declining demand is another factor which makes the formation of a collusive arrangement more likely. With static or falling demand, firms have a greater incentive to collude to avoid price competition. Accordingly, the gains from collusion in the CRT Product market are substantial.

63.    The CRT Products industry in the United States is highly concentrated with very few sellers, facilitating coordination of prices. In 2004, Defendants Samsung SDI, LP Displays, MT Picture Display and Chunghwa Picture Tubes together held a collective 78% of the global market.

64.    High concentration facilitates coordination since there are fewer cartel members among which to coordinate pricing or allocate markets, and it is easier to monitor pricing and production of other cartel members.

65.    Defendants sell CRT Products through various channels, including to manufacturers of electronic products and devices and to resellers of CRT Products.

66.    These electronic products and devices are then sold directly or indirectly to consumers and are not altered during the course of sale.

67.    CRT Products are thus sold to thousands of direct purchasers.

68.    With many buyers, each of which constitutes a small share of the total marketplace, there is less incentive for cartel members to cheat on collusive pricing arrangements, since each potential sale is small, while the risk of disrupting the collusive pricing arrangements carries large penalties.

69.    Defendants all sell as horizontal competitors at the same wholesale and retail level of the distribution chain. When sellers operate at different levels of the distribution chain, it is more difficult to monitor adherence to the cartel arrangement. When sellers operate at the same level of the distribution chain, as in this industry, it is easier to monitor adherence to the arrangement.

70.    Defendants sell and plaintiff and members of the Class purchase CRT Products primarily on the basis of price. Price is the most important competitive factor in CRT Products, and the standardized nature of CRT Products hinders substantial and material non-price competition.

71.    There are substantial barriers to entry in the CRT Products industry requiring substantial time, resources and industry knowledge to even potentially overcome the barriers to entry. It is extremely unlikely that a new producer would enter the market in light of the declining demand for CRT Products.

72.    The CRT Products industry has also been the subject of consolidation and reduction in the number of producers, as well as subject to a substantial number of plant closures and capacity reductions. The fewer the number of producers, the easier it is to communicate and reach agreement, and to coordinate and monitor pricing.

73.    Newer industries are typically characterized by rapid growth, innovation and high profits. The CRT Product market is a mature one, and like many mature industries, is characterized by slim profit margins, creating a motivation to collude.

### Pricing

74.    During the Class Period, while demand in the United States for CRT Products continued to decline, Defendants' conspiracy was effective in moderating the normal downward pressures on prices for CRT Products caused by the entry and popularity of the new generation LCD panels and plasma display products.

75.    During the Class Period, there were not only periods of unnatural and sustained price stability, but there were also unexplained increases in the prices of CRT Products, despite the declining demand due to the approaching obsolescence of CRT Products caused by the emergence of a new, potentially superior and clearly more popular and demanded substitutable technology.

76.    The price increases and price stability for CRT Products during the Class Period were fundamentally inconsistent with a competitive market for a product facing rapidly decreasing demand resulting from the emergence and popularity of LCD panels and plasma display products.

### History of Collusion

77.    Defendants have a history of competitor contacts resulting from joint ventures. Four of the six major manufacturers of CRT Products have been involved in joint ventures in the CRT Products business – Royal Philips/LG Electronics and Matsushita/Toshiba – in addition to numerous cross-licensing and other alliances among practically all of the defendants in related businesses in the electronics industry.

78.    Several defendants have a history of "cooperation" and a corporate culture seemingly condoning anticompetitive conduct. For example, Samsung, the claimed largest manufacturer of CRT Products, was fined $300 million by the United States Department of Justice in October 2005 for participating in a conspiracy to fix prices for Dynamic Random Access Memory. This was the second largest criminal antitrust fine in U.S. history. In April 2007, the DOJ announced that one of Samsung's executives had agreed to serve 14 months in a U.S. prison, the longest imprisonment ever by a foreign defendant charged with price fixing in the United States.

79.    Defendants Samsung and Toshiba have acknowledged being contacted by the U.S. Department of Justice as part of an ongoing investigation for fixing prices of Static Random Access Memory and NAND Flash Memory.

80.    In December 2006, authorities in Japan, Korea, the European Union and the United States revealed a comprehensive investigation into anticompetitive conduct among TFT-LCD manufacturers. Samsung, Toshiba and LG. Philips (a joint venture between Defendants LG Electronics and Royal Philips) are under criminal investigation for price fixing in that closely related industry.

81.    The Department of Justice wrote in legal papers seeking to intervene in the LCD private class action that "[t]he liquid crystal display ("LCD") case is similar to both the DRAM and SRAM cases because in all three cases, there are pending criminal grand jury investigations. Defendants Chunghwa Picture Tubes, Ltd., Royal Philips and LG Electronics are also defendants, along with Samsung and Toshiba, in the LCD class action litigation.

## ANTITRUST INJURY

82.    The unlawful contract, combination or conspiracy alleged above had and is having, *inter alia*, the following effects:

a.    Prices charged by defendants and their co-conspirators to plaintiff and the members of Class for CRT Products were maintained at artificially high and noncompetitive levels;

b.    Plaintiff and members of the Class were required to pay more for CRT Products than they would have paid in a competitive marketplace unfettered by defendants' and their co-conspirators' collusive and unlawful price-fixing; and

c.    Plaintiff and members of the Class have been deprived of the benefits of free, open and unrestricted competition in the market for CRT Products.

83.    During and throughout the period of the contract, combination or conspiracy alleged above, plaintiff and members of the Class directly purchased CRT Products in the United States from defendants.

84.    Plaintiff and the other Class members paid more for the CRT Products than they would have paid under conditions of free and open competition.

85.    As a direct and proximate result of the illegal combination, contract or conspiracy alleged above, plaintiff and the members of the Class were injured and financially damaged in their businesses and property, in amounts that are not presently determined.

86.    Plaintiff and members of the Class have suffered antitrust injury of the type that the federal laws were meant to punish and prevent.

## CLASS ACTION ALLEGATIONS

87.    Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the proceeding paragraphs of this Complaint.

88.    Plaintiff brings this action on behalf of itself and the members of the Class comprising:

> All persons or entities which purchased CRT Products in the United States directly from defendants or their unnamed co-conspirators from May 1, 1998 to the present. Excluded from the Class are defendants, their co-conspirators and their representatives, parents, subsidiaries and affiliates, and government entities.

89.    Plaintiff brings this action on its own behalf and as a class action under Rule 23(a), 23(b)(2) and 23 (b)(3) of the Federal Rules of Civil Procedure on behalf of all members of the Class.

90.    Due to the nature of the trade and commerce involved, plaintiff believes the Class numbers in the thousands, the exact number and identities being known to defendants.

91.    The Class is so numerous and geographically dispersed that joinder of all members is impracticable.

92.    Class members are identifiable from information and records in the possession of defendants.

93.    There are questions of law and fact common to the Class. These common questions relate to the existence of the conspiracy alleged, and to the type and common pattern of injury sustained as a result thereof. The question includes but are not limited to:

a.    Whether defendants and their co-conspirators engaged in a combination and conspiracy among themselves to fix, raise, maintain or stabilize the prices of CRT Products sold in the United States;

b.    The identity of participants in the conspiracy;

21

       c.      The duration of the conspiracy alleged in this Complaint;

       d.      The nature and character of the acts performed by defendants and their co-conspirators in the furtherance of the conspiracy;

       e.      Whether the alleged conspiracy violated Section 1 of the Sherman Act;

       f.      Whether the conduct of defendants and their co-conspirators, as alleged in this Complaint, caused injury to the business and property of plaintiff and other members of the Class;

       g.      The effect of defendants' conspiracy on the prices of CRT Products sold in the United States during the Class Period; and

       h.      The appropriate measure of damages sustained by plaintiff and other members of the Class.

94.      Plaintiff is a member of the Class. Plaintiff's claims are typical of the claims of other members of the Class, and plaintiff will fairly and adequately protect the interests of the members of the Class. Plaintiff purchased CRT Products directly from one or more of the defendants. Plaintiff's interests are aligned with, and not antagonistic to, those of the other members of the Class. In addition, plaintiff is represented by competent counsel experienced in the prosecution of class action antitrust litigation.

95.      The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications, establishing incompatible standards of conduct for defendants.

96.      The questions of law and fact common to the members of the Class predominate over any questions affecting only individual members, including legal and factual issues relating to liability and damages.

97.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  Prosecution as a class action will eliminate the possibility of repetitious litigation.  Treatment as a class action will permit a large number of similarly situated persons to adjudicate their common claims in a single forum simultaneously, efficiently and without the duplication of effort and expense that numerous individual actions would engender. Class treatment will also permit the adjudication of relatively small claims by members of the Class who otherwise could not afford to litigate an antitrust claim such as is asserted in this Complaint.  This class action presents no difficulties of management that would preclude its maintenance as a class action.

## EQUITABLE TOLLING

98.    Throughout the conspiracy, defendants and their co-conspirators affirmatively and actively concealed their unlawful conduct from plaintiff.  Defendants and their co-conspirators conducted their conspiracy in secret and kept it mostly within the confines of their higher-level executives.

99.    Defendants and their co-conspirators publicly provided pre-textual and false justifications regarding their pricing of CRT Products.

100.    Plaintiff did not discover, and could not have discovered through the exercise of reasonable diligence, that defendants and their co-conspirators were violating the antitrust laws as alleged herein until shortly before this litigation was commenced.

## INTERSTATE TRADE AND COMMERCE

101.    The conduct of defendants and their co-conspirators has taken place in and affected the continuous flow of interstate trade and commerce of the United States, in that *inter alia*:

a.       Defendants and their co-conspirators have sold CRT Products throughout the United States;

b.       Defendants and their co-conspirators have each used instrumentalities of interstate commerce to sell CRT Products throughout the United States;

c.       In furtherance of the conspiracy alleged herein, defendants have traveled between states and have exchanged communications through interstate wire communications; and

d.       The conspiracy alleged herein has affected millions of dollars of commerce. Defendants and their co-conspirators have inflicted antitrust injury by artificially raising prices paid by plaintiff and other entities who are themselves engaged in commerce.

## **CLAIM FOR RELIEF**

### **for Violation of Section 1 of the Sherman Act and Section 4 of the Clayton Act**

102.    Plaintiff re-alleges and incorporates each and every allegation set forth above as if fully written herein.

103.    From a date unknown, but beginning at least as early as May 1, 1998, and continuing through the present, defendants and their co-conspirators have combined, conspired and/or contracted to restrain interstate trade in violation of Section 1 of the Sherman Act, 15 U.S.C. §1, and Section 4 of the Clayton Act, 15 U.S.C. § 15.

104.    In furtherance of the unlawful conspiracy, upon information and belief, each of defendants and their co-conspirators has committed overt acts, including, *inter alia*:

a.       agreeing to charge prices at certain levels and otherwise to fix, increase, maintain and/or stabilize prices of CRT Products sold in the United States;

b.       communicating with co-conspirators regarding prices to be charged for CRT Products;

c.      meeting with co-conspirators in order to keep the existence of the conspiracy unknown as to foster the illegal anti-competitive conduct described herein; and

d.      refraining from competing by refusing to offer CRT Products at prices below the agreed-upon fixed price.

105.    Defendants and their co-conspirators engaged in the activities described above for the purpose of effectuating unlawful arrangements to fix, maintain, raise and/or stabilize prices of CRT Products sold in the United States and throughout the world.

106.    Defendants' anti-competitive agreement was implemented by, *inter alia*, instituting controls to prevent the further decline of CRT Product prices, with the actual and intended result that plaintiff and members of the Class paid supracompetitive prices for CRT Products. As a direct and proximate result of the conspiracy, defendants have restrained competition in the CRT Products market and injured plaintiff and each Class member in their business and property in that they have each paid a higher price for CRT Products than they would have paid absent the concerted unlawful activity.

107.    Plaintiff and the members of the Class, therefore, have been injured and financially damaged in their respective businesses and property in an amount to be determined according to proof and are entitled to recover threefold the damages sustained pursuant to Section 4 of the Clayton Act, 15 U.S.C. § 15.

108.    The conduct of defendants and their co-conspirators constitutes a *per se* violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

## PETITION FOR RELIEF

WHEREFORE, plaintiff petitions that:

25

A.    The Court determine that this action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, that plaintiff be appointed class representative and that plaintiff's counsel be appointed as counsel for the Class.

B.    The contract, combination or conspiracy, and the acts done in furtherance thereof by defendants and their co-conspirators, be adjudged to have been in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

C.    Judgment be entered for plaintiff and members of the Class against defendants, jointly and severally, for three times the amount of damages sustained by plaintiff and the Class as allowed by law, together with the costs of the action, including reasonable attorneys' fees, pre and post-judgment interest.

D.    Defendants, their affiliates, successors, transferees, assignees, and the officers, directors, partners, agents and employees thereof, and all other persons acting or claiming to act on their behalf, be permanently enjoined and restrained from, in any manner:

a.    Continuing, maintaining or renewing the contract, combination or conspiracy alleged herein, or from engaging in any other contract, combination or conspiracy having similar purpose or effect, and from adopting or following any practice, plan, program or device having a similar purpose or effect; and

b.    Communicating with any other person engaged in manufacture, distribution or sale of CRT Products except to the extent necessary in connection with a bona fide sales transaction between the parties to such communications.

E.    Plaintiff and members of the Class have such other, further and different relief as the case may require and the Court may deem just and proper under the circumstances.

**JURY DEMAND**

Pursuant to Rule 38(a) of the Federal Rules of Civil Procedure, plaintiff demands a jury

trial of all issues triable by jury.

Dated:  November 29, 2007.

Respectfully submitted,

**KAPLAN FOX & KILSHEIMER LLP**

By: _____

Robert N. Kaplan (RK-3100)
Linda P. Nussbaum (LN-9336)
Gregory K. Arenson (GK-2426)
850 Third Avenue, 14th Floor
New York, NY 10022
Telephone:  (212) 687-1980
Fax:  (212) 687-7714
E mail: rkaplan@kaplanfox.com
        lnussbaum@kaplanfox.com
        garenson@kaplanfox.com

Joseph M. Vanek
David P. Germaine
**VANEK, VICKERS & MASINI P.C.**
111 South Wacker Drive, Suite 4050
Chicago, IL 60606
Telephone:  (312) 224-1500
Fax:  (312) 224-1510
E mails:  jvanek@vaneklaw.com
        dgermaine@vaneklaw.com

Paul E. Slater
**SPERLING & SLATER**
55 West Monroe Street, Suite 3200
Chicago, Illinois 60603
Telephone:  (312) 641-3200
Fax:  (312) 641-6492
E mail:  pes@sperling-law.com

ECF, RELATED

# U.S. District Court
# United States District Court for the Southern District of New York (Foley Square)
# CIVIL DOCKET FOR CASE #: 1:07-cv-10674-GBD
# Internal Use Only

Meijer, Inc. et al v. LG Electronics, Inc. et al
Assigned to: Judge George B. Daniels
Related Case: 1:07-cv-10322-GBD
Cause: 15:25 Clayton Act

Date Filed: 11/29/2007
Jury Demand: Plaintiff
Nature of Suit: 410 Anti-Trust
Jurisdiction: Federal Question

## Plaintiff

**Meijer, Inc.**
*on behalf of themselves and all
others similarly situated*

represented by **Gregory Keith Arenson**
Kaplan Fox & Kilsheimer LLP
850 Third Avenue
14th Floor
New York, NY 10022
(212) 687-1980
Fax: (212) 687-7714
Email: garenson@kaplanfox.com
*LEAD ATTORNEY
ATTORNEY TO BE NOTICED*

**Linda P. Nussbaum**
Kaplan Fox & Kilsheimer LLP
850 Third Avenue
14th Floor
New York, NY 10022
(212) 687-1980
Fax: (212) 687-7714
Email:
lnussbaum@kaplanfox.com
*LEAD ATTORNEY
ATTORNEY TO BE NOTICED*

**Robert N. Kaplan**
Kaplan Fox & Kilsheimer LLP
850 Third Avenue
14th Floor
New York, NY 10022
(212) 687-1980

Fax: (212) 687-7714
Email: rkaplan@kaplanfox.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

Plaintiff
==========

**Meijer Distribution, Inc.**
*on behalf of themselves and all*
*others similarly situated*

represented by **Gregory Keith Arenson**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Linda P. Nussbaum**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Robert N. Kaplan**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

Defendant
=========

**LG Electronics, Inc.**

Defendant
=========

**LP Displays International Ltd.**
*formerly known as*
LG. Philips Displays

Defendant
=========

**Koninklijke Philips Electronics
N.V.**
*also known as*
Royal Philips Electronics N.V.

Defendant
=========

**Philips Electronics North
America Corporation**

Defendant
=========

**Matsushita Electric Industrial
Co., Ltd.**

Defendant

**Panasonic Corporation of North America**

Defendant

**Samsung Electronics Co., Ltd.**

Defendant

**Samsung SDI Co. Ltd.**
*formerly known as*
**Samsung Display Devices Co., Ltd.**

Defendant

**Samsung Electronics America, Inc.**

Defendant

**Samsung SDI America, Inc.**

Defendant

**Toshiba Corporation**

Defendant

**Toshiba America Electronics Components, Inc.**

Defendant

**Toshiba America Information Systems, Inc.**

Defendant

**Matsushita Toshiba Picture Display Co., Ltd.**
*also known as*
**MT Picture Display Co., Ltd.**

Defendant

**MT Picture Display Corporation of America (New York)**

Defendant

**MT Picture Display Corporation of America (Ohio)**

**Defendant**

Chunghwa Picture Tubes, Ltd.

**Defendant**

Tatung Company Of America,
Inc.

| Date Filed | # | Docket Text |
|---|---|---|
| 11/29/2007 | ❶1 | COMPLAINT against Panasonic Corporation of North America, Samsung Electronics Co., Ltd., Samsung SDI Co. Ltd., Samsung Electronics America, Inc., Samsung SDI America, Inc., Toshiba Corporation, Toshiba America Electronics Components, Inc., Toshiba America Information Systems, Inc., Matsushita Toshiba Picture Display Co., Ltd., MT Picture Display Corporation of America (New York), MT Picture Display Corporation of America (Ohio), Chunghwa Picture Tubes, Ltd., Tatung Company Of America, Inc., LG Electronics, Inc., LP Displays International Ltd., Koninklijke Philips Electronics N.V., Philips Electronics North America Corporation, Matsushita Electric Industrial Co., Ltd.. (Filing Fee $ 350.00, Receipt Number 634608)Document filed by Meijer, Inc., Meijer Distribution, Inc..(mbe) (Entered: 12/04/2007) |
| 11/29/2007 | ❶ | SUMMONS ISSUED as to Panasonic Corporation of North America, Samsung Electronics Co., Ltd., Samsung SDI Co. Ltd., Samsung Electronics America, Inc., Samsung SDI America, Inc., Toshiba Corporation, Toshiba America Electronics Components, Inc., Toshiba America Information Systems, Inc., Matsushita Toshiba Picture Display Co., Ltd., MT Picture Display Corporation of America (New York), MT Picture Display Corporation of America (Ohio), Chunghwa Picture Tubes, Ltd., Tatung Company Of America, Inc., LG Electronics, Inc., LP Displays International Ltd., Koninklijke Philips Electronics N.V., Philips Electronics North America Corporation, Matsushita Electric Industrial Co., Ltd.. (mbe) (Entered: 12/04/2007) |
| 11/29/2007 | ❶ | CASE REFERRED TO Judge George B. Daniels as possibly related to 1:07-cv-10322. (mbe) (Entered: 12/04/2007) |
| 11/29/2007 | ❶ | Case Designated ECF. (mbe) (Entered: 12/04/2007) |
| 11/29/2007 | ❶2 | RULE 7.1 CORPORATE DISCLOSURE STATEMENT. No Corporate Parent. Document filed by Meijer, Inc., Meijer Distribution, Inc..(mbe) (Entered: 12/04/2007) |

| 12/12/2007 | ⟳ | CASE ACCEPTED AS RELATED. Create association to 1:07-cv-10322-GBD. Notice of Assignment to follow. (laq) (Entered: 12/21/2007) |
| 12/12/2007 | ⟳ | Magistrate Judge Theodore H. Katz is so designated. (laq) (Entered: 12/21/2007) |
| 12/21/2007 | ⟳3 | NOTICE OF CASE ASSIGNMENT to Judge George B. Daniels. Judge Unassigned is no longer assigned to the case. (laq) (Entered: 12/21/2007) |
| 12/21/2007 | ⟳ | Mailed notice to the attorney(s) of record. (laq) (Entered: 12/21/2007) |
| 12/26/2007 | ⟳4 | STIPULATION RE EXTENSION OF TIME, FOR DEFENDANT TO ANSWER, MOVE, OR OTHERWISE RESPOND TO PLAINTIFF'S COMPLAINT: The deadline for Philips to answer, move or otherwise respond to the complaint shall be extended until the earliest of the following dates (1)forty five days after the filing of a consolidated amended complaint in the CRT Cases; or (2)forty five days after Plaintiffs provide written notice to Philips that Plaintiffs do not intend to file a consolidated amended complaint, provided, however, that in the event that Philips should agree to an earlier response date in any CRT Case, Philips will respond to the complaint in this action on that earlier date (Signed by Judge Denise L. Cote, Part 1 on 12/21/07) (dle) (Entered: 12/26/2007) |
| 01/03/2008 | ⟳5 | INITIAL PRETRIAL CONFERENCE: Initial Conference set for 3/25/2008 at 09:30 AM in Courtroom 15D, 500 Pearl Street, New York, NY 10007 before Judge George B. Daniels. (Signed by Judge George B. Daniels on 1/2/08) (cd) (Entered: 01/03/2008) |
| 01/03/2008 | ⟳6 | STIPULATION RE EXTENSION OF TIME FOR DEFENDANT TO ANSWER, MOVE OR OTHERWISE RESPOND TO PLAINTIFF'S COMPLAINT: The time for defendant Philips to answer, move or otherwise respond to the complaint is extended until (1) 45 days after the filing of a consolidated amended complaint in the CRT cases or (2) 45 days after plaintiffs provide written notice to Philips that plaintiff's do not intend to file a consolidated amended complaint. (Signed by Judge George B. Daniels on 1/3/08) (db) (Entered: 01/03/2008) |
| 03/20/2008 | ⟳7 | CERTIFIED TRUE COPY OF CONDITIONAL MDL TRANSFER OUT ORDER FROM THE MDL PANEL transferring this action from the U.S.D.C. – S.D.N.Y to the United States District Court – Northern District of California. (Signed by MDL Panel on 3/14/2008) (mbe) (Entered: 04/16/2008) |

A CERTIFIED COPY

J. MICHAEL McMAHON,                    **CLERK**

BY _____

DEPUTY CLERK

**United States District Court**
Southern District of New York
Office of the Clerk
U.S. Courthouse
500 Pearl Street, New York, N.Y. 10007-1213

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

                                                        **NOTICE OF REASSIGNMENT**

Meijer

              V.

                                                   07-cv-10674

LG Electronics

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

Pursuant to the memorandum of the Case Processing Assistant, the above-entitled action is reassigned to the calendar of

**Judge        Daniels**

All future documents submitted in this action are to be presented in the Clerk's Office of the Southern District Court for filing and shall bear the assigned judge's initials after the case number.

The attorney(s) for the plaintiff(s) are requested to serve a copy of the Notice of Reassignment on all defendants.

                                   J. Michael McMahon, CLERK

**Dated:    12/12/7**

                          By:      **<u>Lourdes Aquino</u>**
                                      Deputy Clerk

cc:  Attorneys of Record
<u>PS REASSIGNMENT FORM</u>

Data Quality Control                                   Revised:  March 9, 2001

*Part 1 of 5*
*Part 1 F*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MEIJER, INC. and MEIJER DISTRIBUTION, INC., on behalf of themselves and all others similarly situated, | *Judge Daniels* |
| Plaintiffs, | Civil Action No.: 07 CV 10674 (JA) |
| vs. | **STIPULATION RE EXTENSION OF TIME FOR DEFENDANT TO ANSWER, MOVE, OR OTHERWISE RESPOND TO PLAINTIFF'S COMPLAINT** |
| LG ELECTRONICS, INC.; LP DISPLAYS INTERNATIONAL LTD. f/k/a LG. PHILIPS DISPLAYS; KONINKLIJKE PHILIPS ELECTRONICS N.V. a/k/a ROYAL PHILIPS ELECTRONICS N.V.; PHILIPS ELECTRONICS NORTH AMERICA CORPORATION; MATSUSHITA ELECTRIC INDUSTRIAL CO., LTD.; PANASONIC CORPORATION OF NORTH AMERICA; SAMSUNG ELECTRONICS CO., LTD.; SAMSUNG SDI CO. LTD. f/k/a SAMSUNG DISPLAY DEVICE CO. LTD.; SAMSUNG ELECTRONICS AMERICA, INC.; SAMSUNG SDI AMERICA, INC.; TOSHIBA CORPORATION; TOSHIBA AMERICA ELECTRONICS COMPONENTS, INC.; TOSHIBA AMERICA INFORMATION SYSTEMS, INC.; MATSUSHITA TOSHIBA PICTURE DISPLAY CO., LTD. a/k/a MT PICTURE DISPLAY CO., LTD.; MT PICTURE DISPLAY CORPORATION OF AMERICA (NEW YORK); MT PICTURE DISPLAY CORPORATION OF AMERICA (OHIO); CHUNGHWA PICTURE TUBES, LTD.; and TATUNG COMPANY OF AMERICA, INC., | <br><br>USDC SDNY<br>DOCUMENT<br>ELECTRONICALLY FILED<br>DOC #: _____<br>DATE FILED: 12/26/07 |
| Defendants. | |

WHEREAS Plaintiffs Meijer, Inc. and Meijer Distribution, Inc. ("Plaintiffs") filed a complaint in the above-captioned case on or about November 29, 2007;

WHEREAS Plaintiffs allege antitrust violations by manufacturers, distributors, and sells of cathode-ray tubes and products containing cathode-ray tubes (collectively, "CRT products");

WHEREAS six complaints have been filed to date in federal district courts through the United States by plaintiffs purporting to bring class actions on behalf of direct and indirect purchasers alleging antitrust violations by manufacturers, distributors, and sellers of CRT products (collectively, "the CRT Cases");

WHEREAS a motion is pending before the Judicial Panel on Multidistrict Litigation to transfer the CRT Cases to this jurisdiction for coordinated and consolidated pretrial proceedings pursuant to 28 U.S.C. § 1407, a response to the motion has been filed, and the parties anticipate that additional responses will be filed by Plaintiffs and various defendants;

WHEREAS Plaintiffs anticipate the possibility of a consolidated amended complaint in the CRT Cases;

WHEREAS Plaintiffs and Defendant Philips Electronics North America Corporation ("Philips") have agreed that an orderly schedule for any response to the pleadings in the CRT Cases would be more efficient for the parties and for the Court;

WHEREAS Plaintiffs agree that the deadline for Philips to answer, move, or otherwise respond to the complaint shall be extended until the earliest of the following dates: (1) forty-five days after the filing of a consolidated amended complaint in the CRT Cases; or (2) forty-five days after Plaintiffs provide written notice to Philips that Plaintiffs do not intend to file a consolidated amended complaint, provided, however, that, in the event that Philips should

2

agree to an earlier response date in any CRT case, Philips will respond to the complaint in the above-captioned action on that earlier date;

WHEREAS Philips agrees that, if any other steps are taken in any other CRT Case – such as the production of documents, the entry of any stipulation to preserve documents or similar activity – Philips will undertake such actions in this case as well;

WHEREAS Plaintiffs further agree that this extension is available, without further stipulation with counsel for Plaintiffs, to all named defendants who notify Plaintiffs in writing of their intention to join this stipulation and abide by its terms as of they were Philips;

WHEREAS this stipulation does not constitute a waiver by Philips of any defense, including, but not limited to, the defenses of lack of personal jurisdiction, subject matter jurisdiction, improper venue, sufficiency of process or service of process; and

WHEREAS with respect to any named defendant joining the stipulation, this stipulation does not constitute a waiver of any defense, including, but not limited to, the defenses of lack of personal jurisdiction, subject matter jurisdiction, improper venue, sufficiency of process or service of process.

THEREFORE, Plaintiffs and defendant Philips, by and through their respective counsel of record, hereby stipulate as follows:

1.       The deadline for Philips to answer, move, or otherwise respond to the complaint shall be extended until the earliest of the following dates: (1) forty-five days after the filing of a consolidated amended complaint in the CRT Cases; or (2) forty-five days after Plaintiffs provide written notice to Philips that Plaintiffs do not intend to file a consolidated amended complaint, provided, however, that, in the event that Philips should agree to an earlier response date in any

CRT Case, Philips will respond to the complaint in the above-captioned action on that earlier date.

2.    If any other steps are taken in any other CRT Case in which Philips is named as a party – such as the production of documents, the entry of any stipulation to preserve documents or similar activity – Philips will undertake such actions in this case as well.

3.    This extension is available, without further stipulation with counsel for Plaintiffs, to all named defendants who notify Plaintiffs in writing of their intention to join this stipulation.

4.    This stipulation does not constitute a waiver by Philips, or any other named defendant joining the stipulation, of any defense, including, but not limited to, the defenses of lack of personal jurisdiction, subject matter jurisdiction, improper venue, sufficiency of process or service of process.

### IT IS SO STIPULATED.

Dated: December 19, 2007

By: _Gregory K. Arenson_
        Robert N. Kaplan (RK-3100)
        Linda P. Nussbaum (LN-9336)
        Gregory K. Arenson (GK-2426)
        **KAPLAN FOX & KILSHEIMER LLP**
        850 Third Avenue, 14th Floor
        New York, NY 10022
        Telephone: (212) 687-1980
        Fax: (212) 687-7714
        E-mail: rkaplan@kaplanfox.com
                lnussbaum@kaplanfox.com
                garenson@kaplanfox.com

So Ordered.
Jenина Cote
Part I
December 21, 2007

4

Joseph M. Vanek
David P. Germaine
**VANEK, VICKERS & MASINI P.C.**
111 South Wacker Drive, Suite 4050
Chicago, IL 60606
Telephone: (312) 224-1500
Fax: (312) 224-1510
E-mail: jvanek@vaneklaw.com
          dgermaine@vaneklaw.com

Paul E. Slater
**SPERLING & SLATER**
55 West Monroe Street, Suite 3200
Chicago, IL 60603
Telephone: (312) 641-3200
Fax: (312) 64106492
E-mail: pes@sperling-law.com

Attorneys for individual and representative
plaintiffs Meijer, Inc. and Meijer Distribution, Inc.

By: _____
          Ethan E. Litwin (EL 7083)
**HOWREY LLP**
153 East 53rd Street, 54th Fl.
New York, NY 10022
Telephone: (212) 896-6591
Fax: (212) 896-6501
E-mail: litwine@howrey.com

Attorneys for Defendant Philips Electronic North
America Corporation

U.S.D.J.

5

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and accurate copy of the preceding document was sent, in the manner described below, to the following attorneys on this 20th day of December 2007.

Gregory Keith Arenson
Linda P. Nussbaum
Robert N. Kaplan
Kaplan Fox & Kilsheimer LLP
850 Third Avenue
14th Floor
New York, NY 10022
(212) 687-1980
Fax: (212) 687-7714
By mail

Amory Donelly (4527)

------------------------------------------------------------------------------X

Meijer, Inc., on behalf of themselves and
all others similarly situated
Meijer Distribution, Inc, on behalf of themselves
and all others similarly situated
                    Plaintiff(s),

-against-

07cv10674(GBD)
INITIAL PRETRIAL
CONFERENCE

JAN 0 3 2008

LG Electronics, LP Displays International Ltd. formerly
known as LG. Philips Displays Koninklijke Philips
Electronics N.V. also known as Royal Philips Electronics
N.V. Philips Electronics North America Corporation
Matsushita Electric Industrial Co., Ltd. Panasonic Corp.
of North America Samsung Electronics Co., Ltd. Samsung
SDI Co. Ltd. formerly known as Samsung Display Devices
Co., Ltd. Samsung Electronics America, Inc. Samsung SDI
America, inc. Toshiba Corporation Toshiba America Electronics
Components, Inc. Toshiba America Information Systems, Inc.
Matsushita Toshiba Picture Display Co., Ltd. also known as MT
Picture Display Co., Ltd. MT Picture Display Corporation of America
(New York) MT Picture Display Corporation of America (Ohio)
Chunghwa Picture Tubes, Ltd. Tatung Company Of America, Inc.
                    Defendant(s).
------------------------------------------------------------------------------X

TO:    The Attorney(s) for Plaintiff(s):

        This case has been designated an electronic case and has been assigned to this court for all
purposes. Counsel for all parties are required to promptly register as filing "USERS" in accordance with
the procedure for Electronic Case Filing.

        Counsel for all parties are hereby directed to attend a conference at the time and place fixed
below, for the purpose of Case Management and scheduling pursuant to Fed. R. Civ. P. 16. You are
directed to furnish all attorneys in this action with copies of this order and enclosures, and to furnish
chambers with a copy of any transmittal letter(s). If you are unaware of the identity of counsel for any of
the parties, you must forthwith send a copy of the notice and rules to that party personally.

        An Initial pretrial conference will be held on **Tuesday, March 25, 2008 at 9:30 a.m.** at the United
States District Courthouse, 500 Pearl Street, New York, New York, Courtroom 15D.

        No application for adjournment will be considered unless made within one week of the date of this
application.

        Enclosed is a proposed Case Management Plan and Scheduling Order, pursuant to Rules 16 and
26 (f) of the Federal Rules of Civil Procedure. Counsel for all parties are directed to confer regarding the
proposed plan and order. If the proposed schedule is agreeable to all parties, counsel shall sign and file
the enclosed plan and order with the Court seven (7) days before the date of the initial pretrial conference.
If counsel agrees that a different plan and schedule is appropriate, counsel shall sign and file a different
proposed plan and schedule for the court's consideration seven (7) days before the date of the pretrial
conference. In the absence of agreement, the Court, after hearing from counsel, will order a Case
Management Plan and schedule at the conference. Absent extraordinary circumstances, the Plan shall
provide that the case be ready for trial within six months.

        In addition to the matters covered in the Case Management Plan, counsel should also be
prepared to address at the conference the factual and legal bases for their claims or defenses, any issue
as to subject matter jurisdiction, and any other issue relevant to case management.

Dated: January 2, 2008
       New York, New York

SO ORDERED:

GEORGE B. DANIELS
United States District Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
Meijer, Inc., on behalf of themselves and
all others similarly situated
Meijer Distribution, Inc, on behalf of themselves
and all others similarly situated,

                    Plaintiff,          07cv10674(GBD)

      -against-                CIVIL CASE MANAGEMENT
                                        PLAN AND SCHEDULING ORDER

LG Electronics, LP Displays International Ltd.
formerly known as LG. Philips Displays
Koninklijke Philips Electronics N.V.
also known as Royal Philips Electronics N.V.
Philips Electronics North America Corporation
Matsushita Electric Industrial Co., Ltd.
Panasonic Corporation of North America
Samsung Electronics Co., Ltd.
Samsung SDI Co. Ltd. formerly known as
Samsung Display Devices Co., Ltd.
Samsung Electronics America, Inc.
Samsung SDI America, Inc. Toshiba Corporation
Toshiba America Electronics Components, Inc.
Toshiba America Information Systems, Inc.
Matsushita Toshiba Picture Display Co., Ltd.
also known as MT Picture Display Co., Ltd.
MT Picture Display Corporation of America (New York)
MT Picture Display Corporation of America (Ohio)
Chunghwa Picture Tubes, Ltd. Tatung Company Of America, Inc. ,
                          Defendant,
-------------------------------------------------------X

After consultation with counsel for the parties, the following Case Management Plan is adopted. This plan is also a scheduling order pursuant to Rules 16 and 26(f) of the Federal Rules of Civil Procedure.

1.    No **additional parties** may be joined after **May 6, 2008**.

2.    No **amendment** to the pleadings will be permitted after **May 6, 2008**.

3.    Except for good cause shown, all **discovery** shall be commenced in time to be completed by **June 3, 2008**. The Court expects discovery to be completed within 90 days of the first scheduling conference unless, after the expiration of that 90 day period, all counsel stipulate that additional time (not to exceed 60 more days) is needed to completed discovery. In such event, discovery may be extended by the parties on consent, without application to the Court, provided the parties are certain they can still meet the discovery completion date ordered by the Court. The discovery completion date shall not be adjourned except upon a showing of extraordinary circumstances.

4. **Dispositive motions** are to served by **September 2, 2008**. Answering papers are to be served within 14 days. Reply papers are to be served within seven (7) days. In the event a dispositive motion is made, the date for submitting the Joint Pretrial Order shall be changed from that shown herein to three(3) weeks from the decision on the motion. The final pretrial conference shall be adjourned to a date four (4) weeks from the decision on the motion.

5. A final **pretrial conference** will be held on **October 7, 2008 at 9:30 a.m.**.

6. The **Joint Pretrial Order** shall be filed no later than **September 9, 2008**. The requirements for the pretrial order and other pretrial submissions shall be governed by the Court's Individual Rules of Practice.

7. **All motions and applications** shall be governed by the Court's Individual Rules of Practice.

8. The parties shall be **ready for trial** on 48 hours notice on or after **October 14, 2008**. The estimated trial time is ___ _____ days, and this is a (jury) (non-jury) trial.

9. The **Next Case Management Conference** will be held on **July 8, 2008 at 9:30 a.m.**.

Dated: January 2, 2008
New York, New York

SO ORDERED:

_____
GEORGE B. DANIELS
United States District Judge

_____
Attorney for Plaintiff

_____
Attorney for Defendant

-2-

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: JAN 0 3 2008

Judge Daniels

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

MEIJER, INC. and MEIJER DISTRIBUTION, INC.,
on behalf of themselves and all others similarly situated,

Plaintiffs,

vs.

LG ELECTRONICS, INC.; LP DISPLAYS
INTERNATIONAL LTD. f/k/a LG. PHILIPS
DISPLAYS; KONINKLIJKE PHILIPS
ELECTRONICS N.V. a/k/a ROYAL PHILIPS
ELECTRONICS N.V.; PHILIPS ELECTRONICS
NORTH AMERICA CORPORATION;
MATSUSHITA ELECTRIC INDUSTRIAL CO., LTD.;
PANASONIC CORPORATION OF NORTH
AMERICA; SAMSUNG ELECTRONICS CO., LTD.;
SAMSUNG SDI CO. LTD. f/k/a SAMSUNG DISPLAY
DEVICE CO. LTD.; SAMSUNG ELECTRONICS
AMERICA, INC.; SAMSUNG SDI AMERICA, INC.;
TOSHIBA CORPORATION; TOSHIBA AMERICA
ELECTRONICS COMPONENTS, INC.; TOSHIBA
AMERICA INFORMATION SYSTEMS, INC.;
MATSUSHITA TOSHIBA PICTURE DISPLAY CO.,
LTD. a/k/a MT PICTURE DISPLAY CO., LTD.; MT
PICTURE DISPLAY CORPORATION OF AMERICA
(NEW YORK); MT PICTURE DISPLAY
CORPORATION OF AMERICA (OHIO);
CHUNGHWA PICTURE TUBES, LTD.; and
TATUNG COMPANY OF AMERICA, INC.,

Defendants.

Civil Action No.: 07 CV 10674 (JJA)

**STIPULATION RE EXTENSION OF
TIME FOR DEFENDANT TO
ANSWER, MOVE, OR OTHERWISE
RESPOND TO PLAINTIFF'S
COMPLAINT**

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 12/26/07

WHEREAS Plaintiffs Meijer, Inc. and Meijer Distribution, Inc. ("Plaintiffs") filed a complaint in the above-captioned case on or about November 29, 2007;

WHEREAS Plaintiffs allege antitrust violations by manufacturers, distributors, and sells of cathode-ray tubes and products containing cathode-ray tubes (collectively, "CRT products");

WHEREAS six complaints have been filed to date in federal district courts through the United States by plaintiffs purporting to bring class actions on behalf of direct and indirect purchasers alleging antitrust violations by manufacturers, distributors, and sellers of CRT products (collectively, "the CRT Cases");

WHEREAS a motion is pending before the Judicial Panel on Multidistrict Litigation to transfer the CRT Cases to this jurisdiction for coordinated and consolidated pretrial proceedings pursuant to 28 U.S.C. § 1407, a response to the motion has been filed, and the parties anticipate that additional responses will be filed by Plaintiffs and various defendants;

WHEREAS Plaintiffs anticipate the possibility of a consolidated amended complaint in the CRT Cases;

WHEREAS Plaintiffs and Defendant Philips Electronics North America Corporation ("Philips") have agreed that an orderly schedule for any response to the pleadings in the CRT Cases would be more efficient for the parties and for the Court;

WHEREAS Plaintiffs agree that the deadline for Philips to answer, move, or otherwise respond to the complaint shall be extended until the earliest of the following dates: (1) forty-five days after the filing of a consolidated amended complaint in the CRT Cases; or (2) forty-five days after Plaintiffs provide written notice to Philips that Plaintiffs do not intend to file a consolidated amended complaint, provided, however, that, in the event that Philips should

2

agree to an earlier response date in any CRT case, Philips will respond to the complaint in the above-captioned action on that earlier date;

WHEREAS Philips agrees that, if any other steps are taken in any other CRT Case – such as the production of documents, the entry of any stipulation to preserve documents or similar activity – Philips will undertake such actions in this case as well;

WHEREAS Plaintiffs further agree that this extension is available, without further stipulation with counsel for Plaintiffs, to all named defendants who notify Plaintiffs in writing of their intention to join this stipulation and abide by its terms as of they were Philips;

WHEREAS this stipulation does not constitute a waiver by Philips of any defense, including, but not limited to, the defenses of lack of personal jurisdiction, subject matter jurisdiction, improper venue, sufficiency of process or service of process; and

WHEREAS with respect to any named defendant joining the stipulation, this stipulation does not constitute a waiver of any defense, including, but not limited to, the defenses of lack ·of personal jurisdiction, subject matter jurisdiction, improper venue, sufficiency of process or service of process.

THEREFORE, Plaintiffs and defendant Philips, by and through their respective counsel of record, hereby stipulate as follows:

1. The deadline for Philips to answer, move, or otherwise respond to the complaint shall be extended until the earliest of the following dates: (1) forty-five days after the filing of a consolidated amended complaint in the CRT Cases; or (2) forty-five days after Plaintiffs provide written notice to Philips that Plaintiffs do not intend to file a consolidated amended complaint, provided, however, that, in the event that Philips should agree to an earlier response date in any

3

CRT Case, Philips will respond to the complaint in the above-captioned action on that earlier
date.

2.      If any other steps are taken in any other CRT Case in which Philips is named as a
party – such as the production of documents, the entry of any stipulation to preserve documents
or similar activity – Philips will undertake such actions in this case as well.

3.      This extension is available, without further stipulation with counsel for Plaintiffs,
to all named defendants who notify Plaintiffs in writing of their intention to join this
stipulation.

4.      This stipulation does not constitute a waiver by Philips, or any other named
defendant joining the stipulation, of any defense, including, but not limited to, the defenses of
lack of personal jurisdiction, subject matter jurisdiction, improper venue, sufficiency of process
or service of process.

### IT IS SO STIPULATED.

Dated: December 19, 2007

By: _Gregory K. Benson_

Robert N. Kaplan (RK-3100)
Linda P. Nussbaum (LN-9336)
Gregory K. Arenson (GK-2426)
**KAPLAN FOX & KILSHEIMER LLP**
850 Third Avenue, 14th Floor
New York, NY 10022
Telephone: (212) 687-1980
Fax: (212) 687-7714
E-mail: rkaplan@kaplanfox.com
        lnussbaum@kaplanfox.com
        garenson@kaplanfox.com

So Ordered.
Ozinie Cole
Part I
December 21, 2007

4

Joseph M. Vanek
David P. Germaine
**VANEK, VICKERS & MASINI P.C.**
111 South Wacker Drive, Suite 4050
Chicago, IL 60606
Telephone: (312) 224-1500
Fax: (312) 224-1510
E-mail: jvanek@vaneklaw.com
      dgermaine@vaneklaw.com

Paul E. Slater
**SPERLING & SLATER**
55 West Monroe Street, Suite 3200
Chicago, IL 60603
Telephone: (312) 641-3200
Fax: (312) 64106492
E-mail: pes@sperling-law.com

Attorneys for individual and representative
plaintiffs Meijer, Inc. and Meijer Distribution, Inc.

By: _____
     Ethan E. Litwin (EL 7083)
**HOWREY LLP**
153 East 53rd Street, 54th Fl.
New York, NY 10022
Telephone: (212) 896-6591
Fax: (212) 896-6501
E-mail: litwine@howrey.com

Attorneys for Defendant Philips Electronic North
America Corporation

JAN 0 3 2008

HON. GEORGE B. DANIELS

5

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and accurate copy of the preceding document was sent, in the manner described below, to the following attorneys on this 20th day of December 2007.

Gregory Keith Arenson
Linda P. Nussbaum
Robert N. Kaplan
Kaplan Fox & Kilsheimer LLP
850 Third Avenue
14th Floor
New York, NY 10022
(212) 687-1980
Fax: (212) 687-7714
By mail

Amory Donelly (4527)



A CERTIFIED TRUE COPY

MAR 14 2008

ATTEST
FOR THE JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

FEB 27 2008

FILED
CLERK'S OFFICE

**UNITED STATES JUDICIAL PANEL**
**on**
**MULTIDISTRICT LITIGATION**

U.S. DISTRICT COURT
FILED
MAR 25 2008
S.D. OF N.Y.

IN RE: CATHODE RAY TUBE (CRT)
ANTITRUST LITIGATION

C 07-5944 SC

MDL No. 1917

(SEE ATTACHED SCHEDULE)

**FILED**

MAR 18 2008

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

**CONDITIONAL TRANSFER ORDER (CTO-1)**

On February 15, 2008, the Panel transferred one civil action to the United States District Court for the Northern District of California for coordinated or consolidated pretrial proceedings pursuant to 28 U.S.C. § 1407. *See* ___F.Supp.2d___ (J.P.M.L. 2008). With the consent of that court, all such actions have been assigned to the Honorable Samuel Conti.

It appears that the actions on this conditional transfer order involve questions of fact that are common to the action previously transferred to the Northern District of California and assigned to Judge Conti.

Pursuant to Rule 7.4 of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation, 199 F.R.D. 425, 435-36 (2001), these actions are transferred under 28 U.S.C. § 1407 to the Northern District of California for the reasons stated in the order of February 15, 2008, and, with the consent of that court, assigned to the Honorable Samuel Conti.

This order does not become effective until it is filed in the Office of the Clerk of the United States District Court for the Northern District of California. The transmittal of this order to said Clerk shall be stayed 15 days from the entry thereof. If any party files a notice of opposition with the Clerk of the Panel within this 15-day period, the stay will be continued until further order of the Panel.

FOR THE PANEL:

Jeffery N. Lüthi
Clerk of the Panel

Inasmuch as no objection is
pending at this time, the
stay is lifted.

MAR 14 2008

CLERK'S OFFICE
JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

I hereby certify that the annexed
instrument is a true and correct copy
of the original on file in my office.
ATTEST:
RICHARD W. WIEKING
Clerk, U.S. District Court
Northern District of California
By
Deputy Clerk
Date 03/18/08



**A CERTIFIED TRUE COPY**

MAR 1 4 2008

ATTEST
FOR THE JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

FEB 2 7 2008

FILED
CLERK'S OFFICE

UNITED STATES JUDICIAL PANEL
on
MULTIDISTRICT LITIGATION

U.S. DISTRICT COURT
FILED
MAR 2 0 2008
S.D. OF N.Y.

IN RE: CATHODE RAY TUBE (CRT)
ANTITRUST LITIGATION

MDL No. 1917

C 07-5944 SC

(SEE ATTACHED SCHEDULE)

**FILED**

MAR 1 8 2008

**CONDITIONAL TRANSFER ORDER (CTO-1)**

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

On February 15, 2008, the Panel transferred one civil action to the United States District Court for the Northern District of California for coordinated or consolidated pretrial proceedings pursuant to 28 U.S.C. § 1407. *See* ___F.Supp.2d___ (J.P.M.L. 2008). With the consent of that court, all such actions have been assigned to the Honorable Samuel Conti.

It appears that the actions on this conditional transfer order involve questions of fact that are common to the action previously transferred to the Northern District of California and assigned to Judge Conti.

Pursuant to Rule 7.4 of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation, 199 F.R.D. 425, 435-36 (2001), these actions are transferred under 28 U.S.C. § 1407 to the Northern District of California for the reasons stated in the order of February 15, 2008, and, with the consent of that court, assigned to the Honorable Samuel Conti.

This order does not become effective until it is filed in the Office of the Clerk of the United States District Court for the Northern District of California. The transmittal of this order to said Clerk shall be stayed 15 days from the entry thereof. If any party files a notice of opposition with the Clerk of the Panel within this 15-day period, the stay will be continued until further order of the Panel.

FOR THE PANEL:

Jeffery N. Lüthi
Clerk of the Panel

**Inasmuch as no objection is pending at this time, the stay is lifted.**

MAR 1 4 2008

CLERK'S OFFICE
JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

I hereby certify that the annexed instrument is a true and correct copy of the original on file in my office.
ATTEST:
RICHARD W. WIEKING
Clerk, U.S. District Court
Northern District of California
By
Deputy Clerk
Date 3/18/08